IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DWAYNE O.,**[1] | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| v. | ) | **No. 17 C 9150** |
| | ) | |
| **ANDREW SAUL, Commissioner of** | ) | **Jeffrey T. Gilbert** |
| **Social Security Administration,**[2] | ) | **United States Magistrate Judge** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Dwayne O. ("Claimant") seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including final judgment. *See* [ECF No. 12]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* [ECF Nos. 29 and 39]. After careful review of the record and for the reasons stated below, the Court affirms the decision of the Commissioner. Claimant's Motion to Reverse the Final Decision of the Commissioner of Social Security [ECF No. 29] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 39] is granted.

---

[1] Pursuant to Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, replacing Nancy Berryhill. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul automatically is substituted as a party in this case.

# I. BACKGROUND

Claimant filed an application for DIB on May 13, 2014 (R. 108, 229), and an application for SSI on March 10, 2017 (R. 257), alleging a disability onset date of May 1, 2013 (R. 91). At the time Claimant filed his application for DIB, he was 54 years old. He had completed three years of college (R. 269), and his past relevant work history included dispatcher, video viewer, and blackjack dealer. (R. 23, 273).

The Social Security Administration denied Claimant's applications for DIB and SSI initially on October 3, 2014 (R. 111-115), and again upon reconsideration on November 24, 2014 (R. 119-124). Claimant timely filed a request for a hearing. (R. 126-127). On March 1, 2017, Claimant, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Brian Saame. (R. 17, 39-69). A Vocational Expert ("VE") also appeared and testified at the hearing. (R. 17).

On June 12, 2017, the ALJ issued his decision denying Claimant's applications for DIB and SSI and found that Claimant was not disabled, as defined by the Social Security Act from May 1, 2013 though the date of the decision, and could perform a restricted range of light work. (R. 17-23). The ALJ's opinion followed the five-step evaluation process required by the Social Security Regulations ("SSRs").[3] *See* 20 C.F.R. § 404.1520.

At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since Claimant's alleged onset date of May 1, 2013. (R. 19). The ALJ, however, noted that there was evidence Claimant had engaged in some work activity in 2015 since the alleged

---

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the district court is "not invariably bound by an agency's policy statements," the court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

onset date, but that it did not rise to the level of substantial gainful activity. (*Id.*) The ALJ found

that Claimant's date last insured, which is the date on which a claimant meets the insured status

requirements of the Social Security Act, was June 15, 2014.[4]

At Step Two, the ALJ found Claimant had the following severe impairments: degenerative

joint disease of the left hip and knee; degenerative disc disease of the lumbar spine; and mild

arthritis of the hands. (*Id.*) The ALJ also found Claimant had the non-severe impairments of

diabetes and obesity, but that those impairments did not result in more than minimal functional

limitations. (R.19-20). At Step Three, the ALJ found that since the alleged disability onset date of

May 1, 2013, Claimant did not have an impairment or combination of impairments that met or

medically equaled the severity of the one of the listed impairments in 20 C.F.R. Part 404, Subpart

P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and

416.920(d)). (R. 20).

The ALJ then assessed Claimant's residual functional capacity ("RFC")[5] and concluded

that Claimant has the capacity to perform light work, including "lifting/carrying 20 pounds

occasionally and 10 pounds frequently, standing/walking six of eight hours, and sitting six of eight

hours." (R. 20). The ALJ, however, found additional limitations, including "frequent balancing

and stooping; occasionally climb ramps and stairs, kneel, crouch, and crawl; no climbing ladders,

ropes or scaffolds; frequent handling and fingering bilaterally." (R. 20). Based on this RFC, the

---

[4] In his Memorandum, Claimant acknowledges that the ALJ determined his date last insured to be June 15, 2014. Claimant, however, notes in a footnote that his certified earnings record reflects that his date last insured was September 2015. Claimant's Memorandum [ECF No. 30], at 1 n.1 (citing R. 239). *But see* (R. 265) (Disability Report Field Office Form SSA 3367 which identifies Claimant's date last insured as June 15, 2014). The Commissioner does not respond to Claimant's contention that his date last insured is a date different than the date identified by the ALJ. The Court need not resolve this discrepancy at this time.

[5] Before proceeding from Step Three to Step Four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

ALJ determined at Step Four that Claimant could perform his past work. (R. 23). Because the ALJ concluded that Claimant could perform his past relevant work, that ended the inquiry, and the ALJ was not required to proceed to Step Five. Based on his review and consideration, the ALJ found Claimant had not been under a disability as defined by the Social Security Act from May 1, 2013, through the date of the ALJ's decision on June 12, 2017. (R. 23).

Claimant then filed a request to review the ALJ's decision on August 3, 2017. (R. 228). When the Appeals Council declined Claimant's request for review on October 25, 2017 (R.1-5), the ALJ's decision became the final decision of the Commissioner. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2014). Claimant now seeks review in the district court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. LEAGAL FRAMEWORK

### A. Five-Step Inquiry

To recover DIB or SSI under Titles II and XVI of the Social Security Act, a claimant must establish that he is disabled within the meaning of the Act.[6] *Keener v. Astrue*, 2008 WL 687132, at *1 (S.D. Ill. Mar. 10, 2008). A person is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, an ALJ conducts a standard five-step inquiry, which involves analyzing "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment,

---

[6] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 and are virtually identical to the SSI regulations set forth at 20 C.F.R. § 416.901.

4

whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). "The claimant bears the burden of proof in each of the first four steps." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F.Supp.2d 1131, 1139-40 (N.D. Ill. 2012).

### B. Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

In reviewing the ALJ's decision, the district court may not engage in its own analysis of whether a claimant is disabled as defined by the Social Security Act. *Young v. Barnhart*, 362 F.3d

995, 1001 (7th Cir. 2004). Nor may the district court "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The district court reviews an ALJ's decision only to ensure that it is supported by substantial evidence. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).

To adequately support a decision, an ALJ must build "a logical bridge from the evidence to his conclusion" that the claimant is not disabled. *Schideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The district court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's opinion. *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013). The ALJ is not required to "'provide a complete written evaluation of every piece of testimony and evidence.'" *Id.* at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). However, when the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). The district court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

On appeal, Claimant makes the following arguments: (1) the ALJ's Step Three analysis was erroneous; (2) the ALJ's RFC determination was erroneous; and (3) the ALJ's Step Four determination was erroneous. The Court will address each argument in turn although not in the order in which Claimant raised them.

**A. The ALJ's Listing Analysis**

Claimant argues that the ALJ's Step Three analysis was flawed. *See* Claimant's Memorandum in Support of his Motion to Reverse the Final decision of the Acting Commissioner of Social Security ("Claimant's Memorandum") [ECF No. 30], at 9. The Court disagrees.

At Step Three of the disability analysis, an ALJ must determine whether a claimant meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If a claimant meets or equals a listed impairment, he presumptively is disabled and does not need to make any further showing. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The claimant bears the burden of proving his impairment meets a listing or medically equals a listing, and the claimant must satisfy each of the requirements set forth in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir.2006). If the claimant's impairments do not satisfy a listing, then the ALJ determines the claimant's RFC prior to moving onto Steps Four and Five. As discussed above, the RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545.

In his Memorandum, Claimant argues that his impairments medically equal a listing. *See* Claimant's Memorandum [ECF No. 30], at 9-10. Claimant, however, fails to develop this argument and does not point to anything in the record to support it.

In his decision, the ALJ specifically stated that he considered listings 1.02 and 1.04 and explained why he concluded that Claimant did not meet or equal those listings. The ALJ specifically explained:

> [T]here is no evidence of the following: an inability to perform fine and gross movements effectively; an inability to ambulate effectively; or nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with ineffective ambulation in the medical record. The evidence shows that the claimant had 5/5 extremity strength throughout, intact sensation throughout, and the claimant testified that he cares for his personal needs and cooks.

Similarly, according to the claimant's function report completed in August 2014, he had no problem independently caring for personal needs and he made meals, did laundry, drove, shopped in stores, attended church, and played baseball with his son.

(R. 20).

It is Claimant's burden to prove his medical condition met or equaled a listing. *Ribaudo*, 458 F.3d at 583. Claimant, however, does nothing more in his Memorandum than raise the issue and say the ALJ must consider equivalence as an additional inquiry at Step Three. *See* Claimant's Memorandum [ECF No. 30], at 9. Claimant does not point to any medical evidence in the record to demonstrate that he meets a listing or that a combination of his impairments equals a listing. Furthermore, it is not clear to the Court on what evidence or listing Claimant is relying. Claimant purports to cite specific language from the ALJ's decision, but the language cited in Claimant's brief does not appear in the ALJ's decision, and the ALJ did not discuss listings 1.07 and 12.06 as identified in Claimant's argument. *See* Claimant's Memorandum [ECF No. 30], at 10.

Without any explanation or support for the argument that his impairments meet or equal a listing, Claimant's argument lacks merit. The Court finds that the ALJ's listing analysis is supported by substantial evidence, and the Court is not persuaded that the ALJ erred in his listing analysis.[7]

### B. The ALJ's RFC Determination

Claimant next argues that the ALJ's RFC analysis was flawed because the ALJ disregarded the opinion of his treating physician, improperly evaluated his symptoms, and failed to adequately account for his pain, obesity, and a combination of impairments when crafting his RFC. *See*

---

[7] The Court notes that Claimant discusses his alleged subjective symptoms and pain in the context of his argument challenging the ALJ's Step Three analysis. The Court, however, address those arguments below in the context of its discussion of the ALJ's RFC determination.

*generally* Claimant's Memorandum [ECF No. 30] at 5-12. The Court again disagrees with Claimant and will address each of Claimant's arguments relating to the ALJ's RFC analysis.

The RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may affect his or her capacity to do work-related physical and mental activities." *See* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Furthermore, the RFC represents "the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."). To support the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. In other words, the ALJ must explain how he reached his conclusions and build an "accurate and logical bridge" from the evidence to his conclusions. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

### 1. Weight Given to Claimant's Treating Physician

As part of his argument that the ALJ erred in determining his RFC, Claimant contends the ALJ did not properly weigh the opinion of his treating physician, Dr. Leonard Kranzler. Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion if it is well supported by medically acceptable diagnostic techniques and it is not inconsistent with other substantial evidence of record.[8] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If an ALJ concludes that a treating physician's opinion is not entitled to controlling weight, he must give good reasons for discounting the opinion, after considering the following factors: (1) whether

---

[8] The Social Security Administration recently adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because these new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *see also* 20 C.F.R. § 404.1527(c). As long as the ALJ articulates his reasons, he "may discount a treating physician's medical opinion if it is inconsistent" with the opinion of a consulting physician. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

Here, the ALJ explained that he gave little weight to Dr. Kranzler's opinion because it exclusively addressed an issue reserved for the Commissioner, which is the ultimate determination as to whether an individual is able to work and perform substantial gainful activity. (R. 22). There are two forms titled "Patient Status Form" from Dr. Kranzler in which he opined that Claimant could not work. (R. 440-41). One is dated February 7, 2016, and the date is not identifiable on the other one. (*Id.*) Those opinions consisted of a single check-box which stated: "Patient CAN NOT WORK." (*Id.*) The ALJ reasonably discounted these statements because a medical source statement on an issue reserved for the Commissioner receives no special significance. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[T]he ALJ did not have to accept Dr. Cusack's October 2012 conclusory statement that Loveless could not work."). This reason alone was sufficient for the ALJ to discount the Dr. Kranzler's opinion. An opinion from a treating physician that simply checks a box any without any elaboration is not entitled to controlling weight, and it is reasonable for an ALJ to "demand . . . from [a treating physician] some explanation for finding limitations so . . .

10

severe." *See McFadden v. Berryhill*, 721 Fed. Appx. 501, 505, (7th Cir. 2018); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion ... the more weight we will give that opinion.").

Claimant also contends that the ALJ failed to properly analyze Dr. Kranzler's opinion because he did not specifically address each factor set forth in 20 C.F.R. § 404.1527. The Court acknowledges that the ALJ in this case did not explicitly weigh each factor in discussing Dr. Kranzler's opinion. The ALJ's decision, however, makes clear that he was aware of and considered many of those factors, including Dr. Kranzler's treatment relationship with Claimant, the consistency of his opinion with the record as a whole, and the supportability of his opinion. (R. 22). *See Elder*, 529 F.3d at 415-16 (affirming denial of benefits when the ALJ discussed only two of the relevant § 404.1527 factors).

In addition, Dr. Kranzler treated Claimant in 2016 and 2017, well after Claimant's date last insured, and there is no objective medical evidence to support Dr. Kranzler's opinion that Claimant was not able to work during the relevant time period prior to his date last insured—whether it is as the ALJ found to be June 15, 2014 or September 2015 as Claimant contends. In either scenario, there is no objective medical evidence in the record that supports Dr. Kranzler's opinion that Claimant could not work in either 2014 or 2015.

Accordingly, the Court finds the ALJ's analysis of Dr. Kranzler's opinion was reasonable, and his decision to give it little weight is supported by substantial evidence. The ALJ sufficiently accounted for the § 404.1527 factors and built an "accurate and logical bridge" between the evidence and his conclusion. Under these circumstances, it is not for this Court to second guess the ALJ's decision not to give controlling weight to the check-box conclusion of Claimant's

treating physician, rendered years after Claimant's date last insured, concerning an issue reserved to the Commissioner.

## 2. Weight Given to State Agency Doctors

Claimant next argues the ALJ was wrong to accept the state agency doctors' opinions over that of his treating physician. *See* Claimant's Memorandum [ECF No. 30], at 11. Again, the Court disagrees.

The ALJ provided a narrative explanation of the limited record evidence in his RFC analysis. (R. 20-23). The ALJ begins his discussion of the medical evidence with the consultative examination performed by Dr. Dante Pimentel in September 2014. (R. 21). The ALJ noted that Dr. Pimentel opined that Claimant could sit, stand, walk greater than 50 feet, and was only "mildly impaired" in his abilities to handle objects and to carry out work-related activities. (R. 21, 355). The ALJ explained that he gave Dr. Pimentel's opinion great weight because it was consistent with his "minimal examination findings, including 5/5 extremity strength and normal gait." (R. 21, 353-59). The ALJ also noted that Dr. Pimentel's opinion was consistent with the "limited treatment of record." (R. 21).

The ALJ next discussed the medical evidence relating to Claimant' car accident in October 2016, including radiology reports and MRIs. (R. 21). The ALJ compared the imaging to a subsequent physical examination, during which Claimant demonstrated full range of motion in his neck, a normal back inspection, and no motor or sensory deficits. (*Id.*) The ALJ also considered "minimal examination findings such as no weakness or tenderness" as observed by Dr. Kranzler. (R. 21, 445).

The ALJ then discussed additional opinion evidence from Dr. Khuram Khan dated September 13, 2016. (R. 21, 457-459). The ALJ noted the limitations identified by Dr. Khan and

explained that his opinion was given limited weight because "it is inconsistent with the conservative treatment of record, including medication management" and it is "inconsistent with the corresponding treatment records showing minimal examination findings, including no weakness or tenderness." (R. 21).

Lastly, the ALJ discussed the opinion evidence from the State agency medical consultants. The first opinion from Dr. James Hinchen opined that Claimant "could perform medium exertion with frequent postural activities." (R. 22). The second opinion from Dr. William Bolz concluded that "there is insufficient evidence prior to the date last insured of June 15, 2014. (R. 22). The ALJ gave these opinions limited weight because "evidence received at the hearing level, including the claimant's testimony, supports finding the claimant capable of a range of light work. (R.22).

Claimant essentially contends that the ALJ should have weighed the evidence differently than he did, but it is not this Court's role to reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be balanced. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ provided a narrative discussion of the medical evidence, explained the weight he was giving to each of the medical opinions, and offered sound explanations for his decision. The Court cannot say the ALJ's analysis is not supported by substantial evidence, and the Court is not persuaded that the ALJ improperly balanced the medical opinion evidence in this case.

Finally, Claimant argues that the non-examining state agency consultants who provided opinions in 2014 did not have Dr. Kranzler's opinion from 2016 when they gave their opinions. This is an odd argument because Dr. Kranzler's "opinion" did not even exist in 2014. Claimant seems to be arguing, though, that the 2014 opinions were outdated because of Dr. Kranzler's 2016 opinion and, therefore, were entitled to little weight. As discussed above, however, Dr. Kranzler's

13

opinion is entitled to very limited weight in evaluating the medical evidence in the record and, for that reason, it does not undercut the earlier opinions of the non-examining state agency consultants.

### 3. Subjective Complaints of Pain

Claimant contends that the ALJ committed multiple errors in assessing his subjective complaints. *See* Claimant's Memorandum [ECF No. 30], at 5-8. The Court again disagrees with Claimant's contentions.

Credibility determinations by the ALJ are given deference because the ALJ is in a unique position to hear, see, and assess witnesses. *See Murphy v. Colvin*, 759 F. 3d 811, 815 (7th Cir. 2014). "Therefore, a court will only overturn an ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Id.* at 816. In drawing conclusions about a claimant's credibility, "the ALJ must explain her decision in such a way that allows the court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.*

An ALJ must consider a claimant's own statements about his impairments and any pain he experiences. SSR 16-3p establishes a two-step process for evaluating a claimant's subjective statements. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017); 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 404.1529. Then, once an underlying "physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established," an ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities..." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several

14

factors, including the claimant's daily activities, h[is] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 562 (7th Cir. 2009) (citations omitted); *see also* SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c). An ALJ's assessment is entitled to deference unless it is "patently wrong." *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

At the outset of his analysis, the ALJ specifically noted:

> The claimant alleges an inability to perform past relevant work due to an inability to sit for more than two hours and an inability to use his hands required for the work. The claimant testified that he is unable to work due to pain his back and hands. According to the claimant, he has had back pain since 2013. The claimant also completed a medical and Job Worksheet, noting that he is unable to sit or stand for any long periods of time due to a back disorder and arthritis.

(R. 21). The ALJ then proceeded to go through Claimant's medical records and the objective medical evidence.

The glaring problem in this case is that there are very few, if any, medical records during the period of time prior to Claimant's date last insured—whether it is June 15, 2014, or September 2015. It is a claimant's burden to demonstrate that he was disabled prior to his date last insured. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty...."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). There is no objective medical evidence to support a finding of disability in this case.

Nevertheless, the ALJ proceeded to the next step to consider Claimant's statements and his complaints of pain in the context of the medical evidence and opinion evidence in the record, and concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical and other evidence of record." (R. 22). In evaluating Claimant's statements and symptoms, the ALJ considered them in the context of Claimant's conservative treatment history, his presentation at the hearing, his activities of daily living, and the contradicting objective medical evidence. (R. 21-22). The Court cannot say the ALJ's analysis was not sufficient or not supported by substantial evidence.

Claimant argues the ALJ improperly considered his conservative treatment history. *See* Claimant's Memorandum [ECF No. 30], at 5-6. The Court disagrees. The Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's conservative treatment. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (upholding finding based in part on "relatively conservative" treatment); *see also Butler v. Astrue*, 2013 WL 660020, at *14 (N.D. Ill. Feb. 22, 2013) ("Courts have acknowledged that an ALJ can reasonably consider a claimant's conservative treatment history."). The ALJ permissibly considered that Claimant elected to forego stronger treatment and explained that this undermined his allegations of debilitating pain. (R. 22). The ALJ explained his reasoning that Claimant's conservative treatment, such as a back brace and medication management, was more conservative than one "would expect for a person suffering from the degree of pain and limitation contended." (R. 22). The Court cannot say that is an unreasonable assessment on this record.

The ALJ also explained that declining surgery suggested Claimant's pain was less severe than alleged. (R. 22). Again, the Court is not in a position to question the ALJ's evaluation; nor is the Court permitted to do so on this record. Claimant addressed his treatment history at the

16

hearing and testified he would "rather deal with the pain" than risk a poor outcome in surgery. (R. 54). This is a legitimate choice. The ALJ, however, is not prohibited from drawing a negative inference based on this reason. Claimant also claims he did not seek additional treatment because he lacked insurance. *See* Claimant's Memorandum [ECF No. 30]. at 8. This argument is not convincing since Claimant, in fact, was insured at the time he declined additional treatment. (R. 54). Claimant testified that he did not have insurance in 2013 and 2014. (R. 58). Claimant's representative, however, conceded that Claimant had insurance by the time of his car accident in 2016 (R. 46), and it was in February 2017 when Dr. Kranzler recommended surgery for his lumbar problems and Claimant was "reluctant to consider it." (R. 469). Based on this record, it was reasonable for the ALJ to concluded that Claimant's insurance coverage status did not play any role in his decision to not have certain treatment.

Claimant also generally contends that the ALJ cherry-picked evidence. *See* Claimant's Memorandum [ECF No. 30], at 7-8. However, an ALJ is not required to "discuss every snippet of information from the medical record that might be inconsistent" with the rest of the record. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Claimant contends the ALJ ignored evidence that he testified that he could not stand for long and could only pick up certain objects. *See* Claimant's Memorandum [ECF No. 30] at 9. The ALJ, however, specifically noted Claimant's complaints that he could not "sit or stand for any long periods" and could not use his hands for work. (R. 21). The ALJ did not ignore these statements; he simply did not take them at face value or conclude they undercut his conclusion as to whether Claimant was disabled before his date last insured.

Claimant also points to the observations of Dr. Pimentel, who performed a consultative examination in September 2014, that Claimant had severe difficulty squatting and arising. *See*

Claimant's Memorandum [ECF No. 30], at 7 (citing R. 358). Claimant, however, fails to explain how this single observation dooms the ALJ's decision. Significantly, the ALJ afforded great weight to Dr. Pimentel's opinion that Claimant was only "mildly" impaired and could sit and stand despite his observation that he had difficulty squatting and arising. (R. 21, 355-358). Failing to discuss this one observation from Dr. Pimentel is not a sufficient reason to upend the ALJ's decision.

Next, Claimant contends the ALJ did not explain how his activities of daily living undermined his subjective complaints of pain. *See* Claimant's Memorandum [ECF No. 30], at 9. The Court disagrees, and Claimant distorts the ALJ's evaluation of his activities of daily living. The ALJ did not cite Claimant's daily activities as proof that he could work full-time as Claimant contends. Instead the ALJ relied on them as evidence that undermined his claims of extreme pain and limitations.

Courts have held that it is permissible for an ALJ "to examine all of the evidence including [a claimant's] daily activities, to assess whether" his alleged symptoms are exaggerated. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). Specifically, the ALJ explained that Claimant's "considerable" activities of daily living undermined his extreme allegations of functional inabilities. (R. 21). The ALJ compared Claimant's statements that he was unable to sit or stand for any long periods of time with other statements that he took care of his own personal needs, cooked, drove, shopped in stores, attended church, and played baseball with his son. (R. 22-23). The ALJ explained these activities were inconsistent with Claimant's subjective statements. (R. 22).

The ALJ also discussed the "minimal examination findings" supporting Claimant's alleged restrictions. (R. 21). The ALJ also noted that Claimant's presentation at the hearing contradicted

18

his statements about limitations on sitting. (R. 22, 58). *See McGuire v. Colvin*, 2013 WL 4782156, at *10 (N.D. Ill Sept. 4, 2013) (holding that an ALJ's personal observation is a "proper factor" to consider and the ALJ is entitled to consider a claimant's "ability to appear and participate during her hearing without outward expressions of pain") (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000).

An ALJ does not have to accept uncritically whatever a claimant says. The ALJ discussed the medical evidence of record, recounted all of Claimant's statements and complaints of pain, and explained why he concluded that Claimant "has not received the type of treatment one would expect for a person suffering from the degree of pain and limitation contended." (R. 22). Simply put, the ALJ was not convinced, and sufficiently explained why he was not convinced, that Claimant experienced the degree of pain he claimed to experience particularly before his date last insured. As the law instructs, an ALJ's credibility determination should be given deference because ALJs are in a special position to hear, see, and assess witnesses. *Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1030 (N.D. Ill. 2019). As such, this Court is not any position to question the ALJ's assessment in this case.

For all of the reasons discussed above, the Court finds that the ALJ's assessment of Claimant's subjective statements and symptoms is supported by substantial evidence.

### 4. Obesity

Claimant also argues that the ALJ failed to properly consider the effects of his obesity on his ability to work. *See* Claimant's Memorandum [ECF No. 30], at 10. Claimant's argument is without merit.

Here, the ALJ specifically noted Claimant was obese, but that the record failed to demonstrate that Claimant has any functional limitations based on his weight. (R. 20); *see*

*Kittelson v. Astrue*, 362 Fed. Appx. 553, 557 (7th Cir. 2010) (noting that ALJ's references to obesity in recounting medical history was enough to show that the ALJ "was aware of and considered them, so any error in not highlighting them was harmless"). Moreover, Claimant does not show how his obesity exacerbated his underlying conditions or how the effects of obesity, in combination with his other impairments, prevented him from working. Nor has Claimant identified what additional limitations the ALJ should have included in the RFC assessment to accommodate his obesity. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (finding ALJ's failure to even mention obesity harmless when a claimant did not explain its impact on her ability to work). Even if Claimant were correct that the ALJ's failure to discuss his obesity in greater detail was erroneous, the Court finds that any error on the ALJ's part was harmless because substantial evidence supports the ALJ's conclusions in this case. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (noting that ALJ's determination that claimant could perform light work was harmless because substantial evidence supported conclusion that claimant could also perform sedentary work); *see also Cooley v. Berryhill*, 738 Fed. Appx. 877, 881 (7th Cir. 2018).

For these reasons, Claimant has not shown that his weight created any functional limitation or that the ALJ's RFC assessment was flawed for a failure to consider his weight.

### C. The ALJ's Step Four Analysis

Claimant argues that the ALJ's analysis at Step Four was flawed because the ALJ's hypothetical posed to the VE did not account for Claimant's obesity and other limitations, including knee pain and his inability to squat and rise, and did not include "all limitations documented in the medical evidence." *See* Claimant's Memorandum [ECF No. 30], at 14. Claimant's argument is misplaced, and the Court disagrees.

At Step Four, the ALJ compares a claimant's RFC with the physical and mental demands of past relevant work and may use the services of a VE and the Dictionary of Occupational Titles ("DOT") to determine whether the claimant can perform his past relevant work. *See* 20 C.F.R. § 404.1560(b)(2). The ALJ did so here. The VE may offer testimony "within his or her expertise or knowledge concerning the physical and mental demands" of past relevant work, "either as claimant actually performed it or as generally performed in the national economy." *See* 20 C.F.R. § 404.1560(b)(2). Furthermore, the VE provides "expert opinion testimony" about whether a hypothetical person with the claimant's physical and mental limitations can meet the demands of the claimant's previous work. 20 C.F.R. § 404.1560(b)(2). A claimant is not disabled at Step Four if he can perform his past relevant work either as he actually performed it or as generally performed in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(b).

After the ALJ determined Claimant's RFC, he posed a hypothetical to the VE to determine whether Claimant could perform his past relevant work with certain limitations. The ALJ "is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 404.1545, 404.1560(b). Claimant asserts a similar argument about the ALJ's failure to consider his obesity when challenging the ALJ's Step Four analysis as he did with his challenge to the ALJ's RFC determination. Claimant's argument is redundant and lacks merits for the same reasons discussed above in the context of Claimant's RFC. *See Wurst v. Colvin*, 520 F. App'x 485, 489 (7th Cir. 2013) ("But the hypothetical was based on the ALJ's RFC determination, so [claimant's] objection only repeats his challenge to the RFC"). As discussed above, Claimant did not demonstrate how his obesity exacerbated his underlying conditions or how the effects of his weight, in combination with his other impairments, prevented him from working. Nor has

Claimant identified what additional limitations the ALJ should have included in the RFC assessment to accommodate his obesity. The ALJ incorporated into his hypothetical to the VE only those impairments and limitations that he found credible and supported by the record, and the Court cannot take issue with that approach.

Claimant also contends that the ALJ failed to investigate the manner in which Claimant actually performed his past work. *See* Claimant's Memorandum [ECF No. 30], at 15. Notably, however, Claimant does not cite any legal authority in support of his argument. *See Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (internal citations omitted). In any event, Claimant testified about his past jobs. (R. 50-52, 55-57). Here, the ALJ relied on the VE's testimony that Claimant could perform his past relevant as it was actually and generally performed. (R. 23, 59-63). Moreover, Claimant's argument ignores that an individual can perform his past relevant work if he can meet the demands as the job is "generally performed in the national economy." 20 C.F.R. § 404.1520(b)(2). And the Seventh Circuit has recognized that a Step Four finding can stand regardless of whether a claimant would perform the job exactly as he used to perform it. *See Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008) ("In other words, the ALJ need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that the claimant can perform jobs substantially like that one.").

For these reasons, the Court is not persuaded the ALJ erred in the Step Four analysis.

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the ALJ's decision that Claimant is not disabled and not entitled to DIB and SSI is affirmed. Claimant's Motion to Reverse the Final Decision of the Commissioner of Social Security is denied [ECF No. 29] is denied, and

the Commissioner's Motion for Summary Judgment [ECF No. 39] is granted. The Clerk is directed to enter final judgment in favor of the Commissioner.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    January 21, 2020